FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 13, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LONNA O., | No. 4:17-cv-05068-MKD |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 15, 16 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 15, 16. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion (ECF No. 15) and grants Defendant's motion (ECF No. 16).

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

ORDER - 1

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id*.

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The

party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that [s]he is not only unable to do [her] previous work[,] but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite her limitations, 20 C.F.R. §§ 404.1545(a)(1);

416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff protectively filed applications for Title II disability insurance benefits and Title XVI supplemental security income benefits on August 21, 2015 and October 22, 2015, respectively, alleging a disability onset date of January 12, 2015. Tr. 89-90, 219, 225. The applications were denied initially, Tr. 136-53, and on reconsideration, Tr. 155-60. Plaintiff appeared at a hearing before an Administrative Law Judge (ALJ) on September 16, 2016. Tr. 35-88. On March 1, 2017, the ALJ denied Plaintiff's claim. Tr. 18-29.

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 12, 2015. Tr. 20. At step two, the ALJ found Plaintiff has the following severe impairments: degenerative disc disease; obesity; and carpal tunnel syndrome. *Id*. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. Tr. 23. The ALJ then concluded that Plaintiff has the RFC to perform light work, with the following non-exertional limitations: "The claimant can occasionally climb ramps and stairs, cannot climb ladders, ropes, or scaffolds, can occasionally stoop, kneel, crouch, and crawl, and can frequently

balance. The claimant can frequently handle and finger with her bilateral upper extremities." Tr. 23-24. At step four, the ALJ found that Plaintiff is able to perform her past relevant work as a lab tech, as generally found in the national economy, and as a caregiver, as she actually performed the job. Tr. 28. On that basis, the ALJ concluded that Plaintiff is not disabled as defined in the Social Security Act during the adjudicative period. Tr. 29.

On April 27, 2017, the Appeals Council denied review, Tr. 1-6, making the Commissioner's decision final for purposes of judicial review. *See* 42 U.S.C. 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 15. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed the medical opinion evidence;

2. Whether the ALJ properly weighed Plaintiff's symptom claims; and

3. Whether the ALJ made a proper step four determination.

ECF No. 15 at 5.

# DISCUSSION

## A.      Medical Opinion Evidence

Plaintiff contends the ALJ erred by failing to properly consider the opinion of treating physician Charles Batayola, D.O. ECF No. 15 at 7-11.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray v. Comm. of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

### 1. September 24, 2015 Opinion

Plaintiff's treating physician, Dr. Batayola, provided two opinions regarding Plaintiff's physical functional abilities. Tr. 323-25, 399-400. In his first opinion, dated September 24, 2015, Dr. Batayola found Plaintiff was "Severely limited," which is defined as "[u]nable to meet the demands of sedentary work." Tr. 325.

The ALJ gave this opinion little weight for two reasons: (1) Dr. Batayola provided almost no support or basis for the opinion and (2) the opinion was "inconsistent with the minimal physical examination findings, the minimal conservative treatment offered to the claimant, and the minimal and consistent nature of her objective medical findings both before and during the relevant period." Tr. 28.

Plaintiff fails to raise any challenge to the ALJ's treatment of the September 24, 2015 opinion. *See* ECF No. 15 at 8. As such the Court will not consider the weight the ALJ provided to the September 24, 2015 opinion. *See Carmickle v.*

*Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155 1161 n.2 (9th Cir. 2008). The Ninth Circuit explained the necessity for providing specific argument:

> The art of advocacy is not one of mystery. Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court. Particularly on appeal, we have held firm against considering arguments that are not briefed. But the term "brief" in the appellate context does not mean opaque nor is it an exercise in issue spotting. However much we may importune lawyers to be brief and to get to the point, we have never suggested that they skip the substance of their argument in order to do so. It is no accident that the Federal Rules of Appellate Procedure require the opening brief to contain the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(9)(A). We require contentions to be accompanied by reasons.

*Independent Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003).[1] Moreover, the Ninth Circuit has repeatedly admonished that the court will not "manufacture arguments for an appellant" and therefore will not consider claims that were not actually argued in appellant's opening brief. *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994). Because Plaintiff failed to provide adequate briefing, the Court declines to consider this issue.

---

[1]Under the current version of the Federal Rules of Appellate Procedure, the appropriate citation would be to FED. R. APP. P. 28(a)(8)(A).

2. *June 15, 2016 Opinion*

In Dr. Batayola's second opinion, dated June 15, 2016, he limited Plaintiff to lifting and carrying ten pounds occasionally and less than ten pounds frequently. Tr. 399. He limited Plaintiff's standing and walking to a maximum of less than two hours an in eight-hour day and her sitting to a maximum to three hours in an eight-hour day. *Id*. He found that Plaintiff could sit and stand for ninety minutes before changing position and would need to walk around every sixty minutes for ten minutes to relieve discomfort. *Id*. He opined that Plaintiff would be off task twenty-six to fifty percent of the time. *Id*. He limited Plaintiff to occasional twisting and climbing stairs and ladders and precluded Plaintiff from stooping and crouching. Tr. 400. He found that Plaintiff's ability to reach, handle, and push/pull would be affected due to weakness and pain. *Id*. He opined that Plaintiff's impairments or treatment would cause her to miss work four or more days a month. *Id*. When asked to list the medical findings that supported this opinion, he stated "cervical spondylosis, foraminal stenosis cervical spine, degenerative disc disease, chronic neck pain, chronic low back pain." *Id*.

The ALJ gave this opinion little weight. Tr. 28. Because Dr. Batayola's opinion was contradicted by the opinion of Dr. Rubio, Tr. 118-20, the ALJ was required to provide specific and legitimate reasons for rejecting portions of Dr. Batayola's opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found that Dr. Batayola provided insufficient explanation or basis to support such extreme limitations. Tr. 28. "[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole." *Bray,* 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citing *Tonapetyan v. Hatler*, 242 F.3d 1144, 1149 (9th Cir. 2001)). Dr. Batayola was asked to provide medical findings that supported his opinion. Tr. 400. In response, he listed Plaintiff's impairments, "cervical spondylosis, forminal stenosis cervical spine, degenerative disc disease, chronic neck pain, chronic low back pain." *Id*. The ALJ found that a recitation of Plaintiff's impairments was not sufficient, stating "the existence of such conditions does not support the degree of limitation he suggests." Tr. 28. Dr. Batayola provided no other rationale or citation to medical evidence to support his opinion. Tr. 399-400. Therefore, the ALJ's first reason is supported by substantial evidence and is specific and legitimate.

Next, the ALJ gave this opinion little weight because the opinion was based on Plaintiff's subjective reports. Tr. 28. A doctor's opinion may be discounted if it relies on a claimant's unreliable self-report. *Bayliss*, 427 F.3d at 1217; *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The ALJ must provide the basis for his conclusion that the opinion was more heavily based on a claimant's self-reports than on the objective medical evidence. *Ghanim v. Colvin*,

763 F.3d 1154, 1162 (9th Cir. 2014). Plaintiff failed to challenge this reason, thus any challenged is waived and the Court may decline to review it. *See Carmickle*, 533 F.3d at 1161 n.2. However, the Court concludes that the ALJ's reason is supported by the record. The ALJ found that Dr. Batayola completed the form in Plaintiff's presence and that the opinion was inconsistent with the physical examinations, treatment, and objective medical findings. Tr. 28 (citing Tr. 394, 396-98). This supports the ALJ's determination that the opinion was more heavily based on Plaintiff's subjective statements than on objective evidence. As addressed below, the ALJ provided legally sufficient reasons for finding Plaintiff's subjective statements unreliable. As such, this was a specific and legitimate, and unchallenged reason to reject the opinion.

Finally, the ALJ concluded that Dr. Batayola's opinion was "inconsistent with the minimal physical examination findings, the minimal conservative treatment offered to the claimant, and the minimal and consistent nature of her objective medical findings both before and during the relevant period." Tr. 28. An ALJ may reject a treating physician's opinion that is not supported by the record as a whole. *Batson*, 359 F.3d at 1195.

First, the ALJ found that physical examinations revealed minimal findings. Tr. 25-26. Records prior to Plaintiff's alleged onset show that Dr. Batayola did not record any abnormalities associated with her spine during physical exams. Tr.

328-29, 332, 334, 337-39. His records after Plaintiff's alleged onset show tenderness, a restricted range of motion, and spasm upon exam; however, Dr. Batayola failed to record that she appeared in any distress. Tr. 343, 357, 360, 364, 393, 422, 426, 431. Additionally, Plaintiff exhibited normal muscle tone. Tr. 360. On January 6, 2016, Plaintiff was evaluated by Dr. Salahshour who also noted tenderness, and discomfort during range of motion testing and Faber testing. Tr. 375. However, he found her strength to be 5 out of 5 in all extremities, her sensation was intact, straight leg raise testing was negative bilaterally, Spurling's test was negative, Hoffman test was negative, Durkan test at the wrist was negative bilaterally, and the Tinel test at the wrist and elbow were negative bilaterally. Tr. 375. As such, the ALJ's conclusion that the record shows minimal evidence on physical examinations is supported by substantial evidence.

Second, the ALJ found that Plaintiff had received minimal and conservative treatment for her alleged spinal impairments. Tr. 26-27. Plaintiff's complaints of pain were controlled with tramadol and Ibuprofen prior to application, Tr. 328-29, and for over a year following application, Tr. 341, 354, 361, 419. In April 2016, Plaintiff complained of increased pain and was prescribed stronger medication. Tr. 419-23. There was no discussion of surgery, which Plaintiff confirmed in her hearing testimony. Tr. 53. Plaintiff was referred to physical therapy and attended two sessions before putting her treatment on hold to address some dental problems.

Tr. 50, 419, 439, 443. Following the resolution of her dental problems, Plaintiff was referred for additional physical therapy. Tr. 443. However, there is no evidence that Plaintiff attended such therapy. Tr. 63. As such, the ALJ's conclusion that Plaintiff sought and received minimal and conservative treatment is supported by substantial evidence.

Third, the ALJ found that Plaintiff had minimal objective medical evidence of her impairments. Tr. 25. The ALJ found that Plaintiff's 2010 MRI and her 2015 MRI showed no significant change. *Id*. The 2010 MRI showed mild multilevel degenerative changes and an annual bulge with a tear at the L5-S1 level. Tr. 345-46. There was no evidence of any stenosis or nerve root impingement. *Id*. The 2015 MRI showed the same annual bulge and tear at L5-S1 and stated that it was "not appreciably changed since 2010 and not convincingly associated with nerve impact." Tr. 367-68. In concluding that the 2015 MRI showed no change from the 2010 MRI, the ALJ failed to discuss a subtle bulge detected at the L3-L4 level on the 2015 MRI that had not been demonstrated on the 2010 MRI. Tr. 367. However, the impression of the 2015 MRI found that this bulge was "Not new" and there was "No proven impact upon exiting and descending nerves." *Id*. Additionally, the ALJ failed to address the 2016 Nerve Conduction test showing bilateral median neuropathies at the wrists confirming the clinical suspicion for carpal tunnel syndrome. Tr. 445.

In Plaintiff's litany of medical evidence in support of Dr. Batayola's 2016 opinion, she does cite to the 2015 MRI and the 2016 Nerve Conduction test, but she fails to allege that the ALJ overlooked these tests and that overlooking these tests resulted in legal harm. ECF No. 15 at 9-10. Instead, Plaintiff's argument amounts to an alternative interpretation of the medical evidence, which is not the Court's role in judicial review of agency decisions. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987); *Tackett*, 180 F.3d at 1097. Furthermore, Dr. Rubio reviewed the 2015 MRI in forming his March 2016 opinion, Tr. 113-15, and still found Plaintiff capable of light work, which was the exertional level of the work she performed prior to onset, Tr. 119-21, suggesting the overlooked bulge was not a substantial change sufficient to support her claim for disability. Therefore, the Court will not disturb the ALJ's determination that the record contained minimal support for Plaintiff's impairments despite the ALJ overlooking some of the evidence. This was a specific and legitimate reason to reject the 2016 opinion.

Therefore, Plaintiff has failed to raise any challenge sufficient to justify remanding the ALJ's determination based on the treatment of Dr. Batayola's opinions.

**B.     Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were specific, clear and convincing in rejecting her symptom claims. ECF No. 15 at 11-15.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim*, 763 F.3d at 1163 (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently

specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 24.

### 1. *Objective Medical Evidence*

The ALJ found that Plaintiff's statements were inconsistent with the objective medical evidence. Tr. 24-25. An ALJ may cite inconsistencies between a claimant's testimony and the objective medical evidence in discounting the claimant's testimony. *Bray*, 554 F.3d at 1227; *see Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (Although it cannot serve as the sole ground for rejecting a claimant's credibility, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects."). Here, the ALJ summarized Plaintiff's testimony at the hearing, Tr. 24, and provided multiple citations to the record demonstrating how this testimony was not

supported by the medical evidence, Tr. 25-26. First, the ALJ found that Plaintiff's complaints of severe lumbar back pain with radiculopathy were not supported by the MRIs taken in 2010 and 2015 which demonstrated no nerve root impingement. Tr. 25. Additionally, the ALJ found that Plaintiff's testimony that her medications made her feel groggy and nauseous, Tr. 63, 67, were not consistent with the record showing Plaintiff never complained to her providers of any serious medication side effects. Tr. 25. Additionally, the ALJ found that with Plaintiff's allegations of severe physical limitations one would expect her to experience some muscle wasting, but that no such wasting or muscle atrophy was present in the record. Tr. 26.

Plaintiff asserts that the medical evidence does support Plaintiff's statements and provides a list of references to the record as support. ECF No. 15 at 12-14. None of these citations address imaging showing nerve impingement in the lumber spine, complaints of medication side effects, or muscle atrophy. *Id*. As such, Plaintiff's assertion amounts to an alternative interpretation of the evidence. If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. Therefore, the Court will not disturb the ALJ's determination that Plaintiff's statements were

inconsistent with the medical evidence.

### 2. Timing of Reported Symptoms

The ALJ found that Plaintiff's symptoms increased following her application for benefits. Tr. 25. Here, the ALJ found that Plaintiff exhibited motivation for secondary gain in seeking treatment: "There is also evidence that claimant's allegations regarding her back pain increased in severity after she applied for disability benefits." Tr. 25. Evidence of being motivated by secondary gain is sufficient to support an ALJ's rejection of testimony evidence. *See Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992). Here, the ALJ detailed that following Plaintiff's application for benefits, her symptom complaints increased while the objective evidence remained consistent. Tr. 25. Plaintiff argues that the reason Plaintiff applied for benefits was because her condition was worsening and she was unable to work. ECF No. 15 at 14. However, Plaintiff failed to challenge the ALJ's conclusion that when Plaintiff's increased complaints were juxtaposed with Plaintiff's consistent objective evidence, such as imaging and evaluations, there was little support for her worsening symptoms. As such, Plaintiff's assertions cannot prevail, and the ALJ's reason is specific, clear and convincing and supported by substantial evidence.

### 3. Inconsistent Statements

The ALJ found that Plaintiff made inconsistent statements to treating and

evaluating professionals. Tr. 25. In determining the reliability of Plaintiff's statements, the ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements . . . and other testimony by the claimant that appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ found that Plaintiff had reported to her physical therapist that she had stopped working in 2008, Tr. 412, yet her statements upon application for benefits were that she stopped working in January of 2015 following the death of her mother, Tr. 245, 263. Plaintiff argues that her statement to the physical therapist was in reference to when she stopped working full time, which was in in 2008 so she could care for her mother. ECF No. 15 at 14-15. However, the prompt on the form Plaintiff completed for the physical therapist asks for the "Last day worked" and not the last day worked full-time. Tr. 412. Therefore, Plaintiff's challenge is unsupported. The ALJ's reason is supported by substantial evidence and is specific, clear and convincing.

### 4. Minimal and Conservative Treatment

The ALJ found that Plaintiff's statements about her symptoms were inconsistent with the minimal and conservative treatment she received. Tr. 25-26. Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Macri v. Chater*, 93

F.3d 540, 544 (9th Cir. 1996). As discussed at length above, the ALJ's determination that Plaintiff's medical treatment was minimal and conservative is supported by substantial evidence. The ALJ included a paragraph discussing the possible acceptable reasons a claimant may allege to justify a lack of treatment and found that Plaintiff had failed to allege any of these reasons. Tr. 27. As such, the ALJ's determination that Plaintiff's alleged severity of symptoms was inconsistent with the minimal and conservative treatment she received is supported by substantial evidence and is specific, clear and convincing.

### 5. Daily Activities

The ALJ found that Plaintiff's alleged symptoms were inconsistent with her reported activities. Tr. 26. A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict her other testimony, or (2) "the claimant is able to spend a substantial part of [her] day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair*, 885 F.2d at 603). "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id*. (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)). A claimant need not be "utterly incapacitated" to be eligible for

benefits. *Fair*, 885 F.2d at 603.

Here, the ALJ found that despite Plaintiff's statements of severe symptoms with activity she continued to walk her dogs on a regular basis without the use of an assistance device, such as a cane. Tr. 26. Plaintiff testified that she can walk a hundred yards in ten or fifteen minutes. Tr. 54. She also stated that other than when she is walking on the paths down by the river, she does not use any assistance device. Tr. 55-56. In finding Plaintiff's statements inconsistent, the ALJ never addressed the frequency or length of Plaintiff's walks. Tr. 26. He failed to cite to any evidence that Plaintiff walked her dogs in any manner that was inconsistent with the testimony Plaintiff provided about her limitations. *Id*. Moreover, this was the only daily activity cited by the ALJ to support his conclusion. Therefore, this reason is not specific, clear and convincing. However, any error resulting from the ALJ's failure to meet the required standard is harmless as he has provided other specific, clear and convincing reasons for rejecting Plaintiff's testimony. *See Carmickle,* 533 F.3d at 1163 (upholding an adverse credibility finding where the ALJ provided four reasons to discredit the claimant, two of which were invalid); *Batson*, 359 F.3d at 1197 (affirming a credibility finding where one of several reasons was unsupported by the record); *Tommasetti*, 533 F.3d at 1038 (an error is harmless when "it is clear from the record that the . . .

error was inconsequential to the ultimate nondisability determination").

### 6. *Reason for Stopping Work*

The ALJ noted that Plaintiff stopped working because her mother passed away, which undermined her symptom claims. Tr. 27. An ALJ may consider that a claimant stopped working for reasons unrelated to the allegedly disabling condition in evaluation a Plaintiff's symptom complaints. *See Tommasetti*, 533 F.3d at 1040; *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). The record supports the ALJ's conclusion. Here, Plaintiff testified that she stopped working in January 2015 after her mother passed away. Tr. 39-40. Plaintiff had been her mother's caretaker for approximately 20 years and had been paid by DSHS for her work. Tr. 40. This was a clear and convincing reason to discredit Plaintiff's symptom claims.

## C.   **Step Four**

Plaintiff challenges the ALJ's step four determination arguing that the ALJ failed to meet the requirements of S.S.R. 82-62. ECF No. 15 at 16-18.

The claimant has the burden of proving she can no longer perform past relevant work. 20 C.F.R. §§ 404.1512(a), 416.912(a), 404.1520(f), 416.920(f); *Tackett*, 180 F.3d at 1098-99. To find that a claimant has the capacity to perform a past relevant job, the ALJ must make the following findings of fact: (1) the individual's RFC; (2) the physical and mental demands of the past job/occupation;

and (3) that the individual's RFC would permit a return to her past job or occupation. S.S.R. 82-62, 1982 WL 31386 (January 1, 1982).

First, Plaintiff argues that the ALJ erred by failing to include all of Plaintiff's limitations in the RFC determination by rejecting the opinion of Dr. Batayola. ECF No. 15 at 16. However, the Court finds that the ALJ provided legally sufficient reasons for rejecting the opinion. *See supra*. Therefore, the ALJ did not error in his RFC determination.

Second, Plaintiff alleges that the ALJ failed to identify the specific demands of Plaintiff's past relevant work as a lab tech. ECF No. 15 at 17. Plaintiff's argument is two sentences long and is unsupported. *Id*. In his decision, the ALJ provided the Dictionary of Occupational Title (DOT) number, the exertional level as generally performed, the exertional level as Plaintiff performed, and the skill level of a lab tech. Tr. 28. Without a more specific assertion from Plaintiff regarding the alleged missing information, the Court concludes that the DOT number, the exertional levels, and the skill level is sufficient to meet the second requirement of S.S.R. 82-62**.**

Third, Plaintiff argues that the ALJ failed to properly compare the demands of her past relevant work with her functional limitations by only relying on the vocational expert's testimony. ECF No. 15 at 17-18. The Ninth Circuit has held that requiring the ALJ to make specific findings on the record at each phase of the

step four analysis allows for meaningful judicial review. *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001). When the ALJ "makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the [vocational expert's] head, we are left with nothing to review." *Id.* (quoting *Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir. 1996)).

Here, the analysis concerning Plaintiff's past relevant work as generally performed did not occur only in the vocational expert's head. At the hearing, the vocational expert testified that based on the ALJ's hypothetical, which mirrored the RFC determination less the limitation to frequent balancing, Plaintiff could perform her previous work. Tr. 73-74. Furthermore, the vocational expert testified that her testimony was consistent with the DOT. Tr. 81. Considering the DOT is usually the best source for how a job is generally performed, *Pinto*, 249 F.3d at 845, and the vocational expert's testimony did not vary from the DOT, the comparison between the requirements of Plaintiff's past relevant job as a lab tech as generally performed and the RFC can be reviewed. The DOT is available in print for Plaintiff to compare to the ALJ's RFC determination. Furthermore, the ALJ added the limitation to frequent balancing to the RFC determination and consulted the DOT himself to determine if it precluded the job of lab tech. Tr. 29. Thus, the ALJ met the third factual finding under S.S.R. 82-62.

Thus, the Court finds that the step four determination was free of error as to Plaintiff's ability to perform past relevant work as a lab tech as generally performed in the national economy.

## CONCLUSION

**IT IS ORDERED:**

1. Plaintiff's motion for summary judgment (ECF No. 15) is **DENIED**.

2. Defendant's motion for summary judgment (ECF No. 16) is **GRANTED.**

The District Court Executive is directed to file this Order, enter **JUDGMENT FOR THE DEFENDANT,** provide copies to counsel, and **CLOSE THE FILE.**

DATED this August 13, 2018.

<u>s/*Mary K. Dimke*</u>
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE